McNEAL PIPE AND FOUNDRY COMPANY, PROSECUTOR, v. LIPPINCOTT, COLLECTOR, &c.

1. The "Act to incorporate the city of Burlington," approved March 4th, 1851, created a municipal corporation over territory lying within the township of Burlington and not including the whole of that township. *Held*, that a legislative intent is shown thereby to create a dual municipal government over such territory, and that, if there was a debatable question as to such construction of the act, the contemporaneous and long-continued exposition exhibited in the usage and practice under it would require such construction to be given to it.

2. The act above cited empowered the city of Burlington to regulate and keep in repair the streets and highways therein. *Held*, that the city was thereby given the exclusive power and charged with the exclusive duty of maintaining and keeping in repair such highways therein; but the township of Burlington retained power to maintain and keep in repair the highways of the township outside of the city limits and remained charged with that duty.

3. Since the voters within the township continued to have a voice in the determination of the amount to be raised for township roads, and the township assessor remained charged with the duty of assessing the sum so determined upon all the property within the township—*Held*, that an assessment of such a road tax may lawfully be made upon property within the limits of the city of Burlington, the act being capable of such a construction and the contemporaneous and continuous exposition of the acts in that respect justifying and requiring such construction to be adopted by the court.

On *certiorari.*

This *certiorari* brings up an assessment of taxes imposed upon prosecutor by the assessor of the township of Burlington.

It appears by a stipulation of counsel that the municipality known as " The Inhabitants of the City of Burlington," which was incorporated by the "Act to incorporate the city of Burlington," approved March 4th, 1851 (*Pamph. L., p.* 149), covers territory which lies within the township of Burlington, but does not include the whole township.

It also appears that the assessor of the township of Burlington, in 1892, assessed for county, state school and township taxes, property of prosecutor lying wholly within the city of Burlington, and that the tax brought up was imposed by such assessment. It also appears that the township tax thus imposed includes an appropriation for the maintenance of roads.

It further appears that, since the incorporation of the city in 1851, it has been the uniform practice of the township officers to assess taxes in this mode upon the property within the city, and that during all that period voters within the city have taken part in town meetings and elections, have been elected to and served in township offices, and the two municipal corporations have been treated as covering the same territory and including the inhabitants and voters within the city.

The stipulation also shows that the constant practice under the act has been to raise a township tax for roads, to include the territory of the city in the township road districts, and to expend the road tax in those districts on roads without the city limits and on roads within the city limits outside of the " thickly built-up portion of the city." The city taxes are expended, among other things, upon streets within the " built-up " part of the city.

Argued at November Term, 1894, before Justices DIXON, MAGIE and LIPPINCOTT.

For the prosecutor, *Howard Flanders, Samuel W. Beldon* and *Grey & Grey.*

For the defendant, *Joseph H. Gaskill.*

The opinion of the court was delivered by

MAGIE, J.   The first question for decision is whether the assessor of the township of Burlington can lawfully include in his assessment property lying within the city of Burlington, and impose on the owners thereof such taxes as a township assessor is authorized to impose.

It is settled in this state that the legislature may create local political divisions and governments, covering the same territory and of a dual character, and may endow each with the power of taxation for the purpose of performing their respective functions.   *Hoey* v. *Collector,* 10 *Vroom* 75; *Baldwin* v. *Fuller, Id.* 576; *S. C.,* 11 *Id.* 615; *Auryansen* v. *Hackensack,* 16 *Id.* 113.

This question must be determined by a construction of the act of 1851, incorporating the city of Burlington.   My examination of that act has led me to the conclusion that it evinces a legislative intent to create over the territory affected thereby a dual government, leaving the township with at least some of its powers and functions undisturbed, and creating a city government with the powers and functions granted by the act.   In my judgment, such a construction is necessary, because otherwise the inhabitants of the city would have been without representation in the county board of freeholders; they would have been without authority or officers to care for paupers or to raise money for that purpose, and there would have been no mode by which taxes for state or county purposes could have been imposed on persons or property within the city.   If, however, there was a debatable question as to the true construction of the act, then, as the interpretation I have indicated is clearly admissible, we should be bound by the contemporaneous and continuous exposition exhibited in the usage and practice under it, to give it that construction. *State* v. *Kelsey,* 15 *Vroom* 1.

The result is that the objection, so far as it relates to the whole tax, cannot prevail.

It is next contended that the tax before us, so far as it includes money raised for roads, cannot lawfully be imposed on persons or property within the city.

The first insistment is that the power originally vested in the township in respect to the making, working, repairing and keeping in order of roads, was, by the act of 1851, taken away and granted exclusively to the city, so far as the highways within its limits were concerned.

By that act the city was granted the power to regulate and keep in repair the streets and highways therein, and to pave and gravel them, and also the power to raise by tax the money necessary for that purpose.

The city is also given power to lay out and open streets and highways therein. Such a grant has been construed to be exclusive, and, by implication, to deprive the Common Pleas of the power to lay out and open streets previously vested in that court. *Keyport* v. *Cherry*, 22 *Vroom* 417; *S. C.*, 23 *Id.* 544.

Applying a like rule of construction to the grant of power to the city to regulate and repair streets and highways therein, it would necessarily be held to be exclusive, and the act would be construed as impliedly depriving the township of the powers in that respect which it previously possessed.

Upon this construction of the acts, the dual governments existing over the territory in question consisted of the city, having exclusive power over the maintenance and repair of highways therein, and therefore charged with the exclusive duty of maintaining and keeping in repair such highways, and the township, deprived of any power over the streets and highways of the city, and therefore discharged from any duty in respect thereto, but retaining all other powers, including that of maintaining and keeping in repair the roads of the township without the city limits, its duty in respect to which remained unimpaired.

Do the long-continued usage and practice disclosed by the

stipulation exhibit a different construction and require the courts to follow it? In my judgment, they do not. In the first place, a different construction of the acts is impossible and inadmissible, and in such case the contemporaneous construction to the contrary of the plain meaning of the law is inapplicable. In the next place, the stipulation does not disclose a different construction. It does not show that the township tax for roads was imposed for a purpose other than one for which such a tax could lawfully be imposed. All that appears is that a township tax for roads was imposed, and, as the township was empowered to raise money for roads without the city limits, such a tax was within its power and must be assumed to have been imposed for such a purpose. Nor would illegality of its imposition be shown by the fact that moneys thus raised had previously been erroneously expended on roads within the city limits, or even by proof that the moneys raised by this tax had been thus erroneously expended.

It only remains to determine whether such a township road tax can lawfully be imposed upon property within the limits of the city.

This question is by no means free from difficulty. My examination of the acts has led me to the conclusion that such was the legislative intent. It is clear that the voters residing within the city limits remain voters of the township, and are, therefore, entitled to vote at town meetings on all questions, including the determination as to the amount to be raised for roads. It is not conceivable that it was intended to leave them possessed of this power if the money they voted for such purpose was to be raised wholly from property of those outside the city limits. The assessor of the township remains charged with the duty prescribed by the general township act, and is thereby required to impose a tax for all moneys voted to be raised by the township upon the property of the whole township.

Such, at least, is a possible construction of the acts, and it is the construction which has always been adopted in practice.

This result is not entirely satisfactory, because it obviously produces some inequality of taxation. This inequality is not produced by the imposition on city property of a tax for roads without the city, because, had no city been created, such contribution must have been made. It results from the fact that by the grant of exclusive power over its highways, the city becomes wholly responsible for them and loses such contribution towards their maintenance and repair as the property without the city limits would otherwise have made. But this charter was accepted by the city and has been its rule of action for over forty years.

Such being the apparent intent in this legislation, effect must be given to it unless it is beyond legislative authority or obnoxious to constitutional prohibitions. The purpose of the tax being one which townships are charged with, and it being laid with uniformity upon all property in the township, it seems to be within the power of the legislature. The tax is imposed under the General Township act and by the uniform rules therein prescribed, and does not fall under the constitutional prohibition.

The result is that I think the tax before us should be affirmed, with costs.

The like result is reached in the other cases argued with this and presenting the same question.